IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND LAVORICO,<br><br>    Petitioner,<br><br>vs.<br><br>M. MARTEL, Warden, Mule Creek State Prison,<br><br>    Respondent. | No. 2:09-cv-00418-JKS<br><br>MEMORANDUM DECISION |

Raymond Lavorico, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S.C. § 2254.  Lavorico is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Mule Creek State Prison.  Respondent has answered.  Lavorico has not replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

In March 2006 Lavorico was convicted by a jury in the Sacramento County Superior Court of four counts of Lewd and Lascivious Acts with a Child under the Age of 14 Years (Cal. Penal Code § 288(a)), two counts of Forcible Lewd and Lascivious Acts with a Child under the Age of 14 Years (Cal. Penal. Code § 288(b)(1)), and two counts of Forcible Sodomy by a Person More Than 10 Years Older than the Victim (§§ 269(a)(3), 286).  The jury also found true the multiple-victim sentence enhancement allegation (§ 667.61(e)(5)).  The trial court sentenced Lavorico to an aggregate prison term of 120 years to life, comprised of consecutive, indeterminate terms of 15 years to life on each of the four counts of lewd acts (§ 288(a)) and each

of the two counts of forcible sodomy (§§ 269(a)(3), 286).  Lavorico timely appealed to the California Court of Appeal, Third District, which affirmed Lavorico's conviction and sentence in a reasoned, unpublished decision,[1] and the California Supreme Court denied review on March 12, 2008.  On February 6, 2009, Lavorico filed a petition for habeas relief in the Sacramento County Superior Court, which was denied in an unreported, reasoned decision.  Lavorico's subsequent petition for habeas relief was denied by the California Court of Appeal, Third District, on July 9, 2009.  Lavorico did not seek further review of the grounds raised in his state habeas petitions in the California Supreme Court.  Lavorico timely filed his Petition in this Court on February 10, 2009, and his Amended Petition on September 11, 2009.

The facts underlying Lavorico's conviction, as summarized by the California Court of Appeal, are:

> A.  The Charged Offenses
> The two victims in this case, A. and her younger sister A-L.,[FN3] were [Lavorico's] nieces.  Beginning in 1993, when the girls' parents were divorced, they spent alternate weeks with each parent.
>> FN3.  A. was born in the spring of 1990.  AL. was born in the spring of 1992.
>
> In 1998, [Lavorico] and his wife Connie moved into a new house in Elk Grove where A-L. and A. visited them during the weeks they were with their father.  Once or twice a month, the girls spent the night at [Lavorico's] house along with their father.  About once every two months, they spent the night at [Lavorico's] house without their father.
> One time when A-L. was six or seven years old, she was sleeping with her sister on an air mattress in [Lavorico's] living room.  During the night, [Lavorico] picked her up and placed her on the couch where he reached under her clothing and touched both of her breasts for longer than a minute, moving his hand in a circular motion.  She tried to scoot away, but he grabbed her and pulled her closer to him. When he was done, he put her back on the air mattress.

---

[1] *People v. Lavorico*, 2007 WL 4510347 (Cal. App. Dec. 26, 2007).

[Lavorico] touched A-L.'s breasts in that manner on five or six separate occasions. Each incident occurred at night in the living room of his house. The last time he touched her like that was when she was eight years old.

A. began staying at [Lavorico's] house when she was in the third grade and continued to visit her aunt and uncle until she was in the eighth grade. During that time-period, [Lavorico] forced her to suck his penis, touched her vagina with his lips and tongue, and "stuffed both of his fingers and his penis in [her] butt." He committed these acts both day and night. Sometimes A.'s sister and aunt Connie were in the house, but they never walked in when he was molesting A.

One such incident occurred when A. was in the fourth grade. [Lavorico] picked her up from her father's house and took her back to his own house so she could retrieve some pills she had left in the kitchen. When they arrived at his house, he grabbed her arm and pulled her into the bathroom and told her to take off her clothes. She complied by removing her jeans and underwear and he put his lips on her vagina as she was lying on her back. He then removed his own jeans and underwear and got on top of her and positioned himself with his face over her vagina and his penis over her face and told her to suck his penis. She resisted at first and tried to push him away but he was too big. She also tried to keep her mouth shut, but eventually relented. When he finally ejaculated, he told her to swallow the semen and placed his hand over her mouth. Afterwards, she grabbed her pills and ran out of the house where she waited for him to take her home. This incident lasted about 30 to 45 minutes. [Lavorico] forced A. to orally copulate him 10 to 12 times.

On another occasion, when A. spent the night at [Lavorico's] house, she was half-asleep when she noticed him next to her bed. He put his hand under her clothing and touched her breasts and her vagina.

According to A., [Lavorico] molested her every time she and her sister spent the night at his house without her father present. He touched her vagina between 15 and 20 different times and put his fingers in her buttocks more than five times. On 15 to 20 other occasions, he put his penis in her buttocks. When these incidents occurred, A. was sitting on him with her back towards him and he had his hands on her hips. With one exception, each time she tried to get away, he grabbed her by the arm and sodomized her. He ejaculated more than half the time and used a cloth to clean both of them. On the occasions when he sodomized her, he began by either putting his finger in her buttocks or inserting his penis in her mouth.

In late December 2004, A. asked A-L. if [Lavorico] had done anything to her when she was young. When A-L. indicated that he had, the two sisters spent the next two days discussing what [Lavorico] had done to them. Two days later, they told their father about the molestations and he notified the police.

B. Uncharged Offenses

On one occasion, [Lavorico] went to A.'s house in West Sacramento. After her father left the house to take her sister to a dance class, A. and [Lavorico]

3

were alone in her bedroom. He was on the floor and while she sat on his lap, he put his finger and then his penis in her buttocks.

In 1985, R.S. lived with her family in an apartment complex in Germany while her husband was stationed there. The couple had a son and a seven year-old daughter, M.$^{FN11}$ [Lavorico] and his wife Connie lived upstairs with their two sons, F. and R., and R.S. and Connie became friends.

> FN. 11. M. was born in late fall 1977.

On the afternoon of January 26, 1985, R.S.'s children went upstairs to play with F. and R. Sometime later, R.S. went upstairs to visit Connie, and after chatting a while, R.S. decided to check on her children. As she pushed open the door to F.'s room, she asked, "[w]hat are you guys doing?" The door hit [Lavorico] in the back. When she looked down to see what was blocking the door, she saw [Lavorico] was lying on the floor with M. next to him. He had his hand down the back of her pants and quickly shoved her off his leg and removed his hand from her pants. The two younger boys were playing with blocks and their backs were facing the door.

R.S. was in shock. She told her children it was time to go and they returned to their apartment where R.S. spoke to M. about what happened. They reported the incident to the military authorities and the matter was tried by court-martial, which resulted in a verdict of not guilty.

**Defense**

[Lavorico] did not testify but called his wife to testify on his behalf. Connie testified that [Lavorico] drove a truck for a number of years and he was gone many weekends. She was a light sleeper and because [Lavorico] snored, she knew when he was sleeping and always heard him when he got out of bed.$^{FN12}$

> FN12. On cross-examination Connie admitted that she sometimes slept in the living room because [Lavorico] snored very loudly.

In 1998, she and [Lavorico] purchased a home in Elk Grove where her brother brought his daughters to visit. The girls spent the night about six times a year and would either sleep on the trundle bed in the extra bedroom or on the queensize sofa couch in the living room. However, since [Lavorico] worked many weekends, he was not always there when the girls spent the night. The girls did not seem uncomfortable about spending the night and did not want to go home when their father came to pick them up.$^{2}$

## II. GROUNDS RAISED/DEFENSES

In his Amended Petition, Lavorico raises two grounds: (1) that the trial court erred in admitting evidence of the uncharged 1985 act; and (2) the trial court mistakenly believed that it

---

$^{2}$ *Id.* at *1-*3 (footnotes cross-referencing to counts omitted).

4

had no discretion to impose concurrent prison terms. Respondent does not assert any affirmative defense.[3]

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7] When a claim falls under the

---

[3] *See* Rules—Section 22554 cases, Rule 5(b).

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

"unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[9] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11] Because state-court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

The Supreme Court recently underscored the magnitude of the deference required:

*As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) *(discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's*

---

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

*precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the last reasoned decision by the state court.[14] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[15] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[16]

## IV. DISCUSSION

Ground 1: Admission of Evidence of 1985 Incident

Lavorico contends that, because it was irrelevant, uncertain, remote, and unduly prejudicial, the admission of evidence of the 1985 incident of which he was acquitted was improper. In rejecting Lavorico's argument, the California Court of Appeal held:

I.
The 1985 Uncharged Offense
    [Lavorico] contends the trial court abused its discretion by admitting evidence of the 1985 uncharged offense in Germany. He argues that the evidence

---

[13] *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786-87 (emphasis added).

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[15] *Ylst*, 501 U.S. at 802-03.

[16] *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

should have been excluded because the alleged offense was remote and uncertain. He further argues the prejudicial effect of this error was exploited and exacerbated by the prosecutor during closing argument. Respondent contends the trial court properly admitted the evidence under Evidence Code section 1108 and that [Lavorico] forfeited any claim of prosecutorial misconduct by failing to object in the trial court. We agree with respondent on the first point and find no error.[FN13]

> FN13. Respondent contends [Lavorico] has raised a claim of prosecutorial misconduct, which he has forfeited by failing to raise by a timely objection in the trial court. We disagree because he does not contend by way of argument or citation of authority that the prosecutor committed misconduct. Rather, he argues that the prosecutor's exploitation of the evidence during closing argument made the erroneous admission of the evidence all the more prejudicial.

A. Background

The prosecution moved in limine to admit evidence of the 1985 offense involving seven-year-old M. under Evidence Code section 1101, subdivision (b) to prove common plan or scheme, sexual intent and to corroborate the victims' testimony and under Evidence Code section 1108 to show his propensity to molest preadolescent females.

The prosecutor described the proffered evidence as follows: "In 1985, [Lavorico] was in the military stationed in Germany. In January 1985 [R.S.] allowed [Lavorico] and his wife Connie to baby-sit her 7-year-old daughter, [M.] On the 29th of January 1985, [R.S.] came to pick up her daughter at [Lavorico's] home. She entered the home and proceeded upstairs to find her daughter on [Lavorico's] lap with his hand down the back of her pants. She confronted [Lavorico] about what he was doing and [Lavorico] denied that he had put his hand down her pants."

The trial court ruled this evidence was admissible under both Evidence Code sections 1101, subdivision (b) and 1108, finding the probative value of the evidence outweighed its prejudicial effect. The court found the evidence was probative on the questions of sexual intent and common plan because of the similarities between the charged and uncharged offense, including the victims' age, the similarity of the alleged conduct, and [Lavorico's] role as the victims' caretaker. The court also noted that evidence of the uncharged offense was independent of the charged offenses, the allegations of the uncharged offense were not particularly inflammatory compared to those of the charged offenses, and that proof of the proffered evidence would not be time-consuming.

B. Analysis

The trial court's ruling on the admissibility of evidence of uncharged offenses is reviewed for abuse of discretion. (People v. *Carter* (2005) 36 Cal.4th 1114, 1149.) We will not find an abuse of discretion unless the trial court exceeded the bounds of reason by exercising its discretion in an arbitrary,

8

capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*Ibid.*)

Evidence Code section 1101, subdivision (a), states the general rule that evidence of a person's character or trait of character is inadmissible to prove his propensity to commit such conduct on a specific occasion. (*People v. Falsetta* (1999) 21 Cal.4th 903, 913 (*Falsetta* ).) Under one exception to that rule, evidence of an uncharged offense is admissible when relevant to prove motive, intent, common plan, identity, or absence of mistake or accident, other than disposition to commit the act. (Evid.Code, § 1101, subd. (b).)

Evidence Code section 1108 (section 1108), states an additional and broader exception to the general rule by allowing propensity evidence in sex offense cases. (*Falsetta, supra,* 21 Cal.4th at p. 907.) Subdivision (a) of section 1108 states that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not made inadmissible pursuant to Section 352."

Section 1108 was intended to ensure that "the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility" because "'this evidence is "critical" given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial.'" (*Falsetta, supra,* 21 Cal.4th at p. 911.) By enacting section 1108, the Legislature found "evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101." (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405.)

Evidence Code section 352 grants the trial court broad discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) The prejudice or damage to be avoided is not that which naturally flows from relevant, highly probative evidence, but from evidence that "'tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.'" (*People v. Bolin* (1998) 18 Cal.4th 297, 320; *People v. Harris* (1998) 60 Cal.App.4th 727, 737.)

To avoid undue prejudice from the admission of evidence of a prior uncharged sex offense, the trial court must engage in a careful weighing process under Evidence Code section 352 by considering "such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding

9

irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra,* 21 Cal.4th at p. 917.)

Applying these factors, we find no abuse of discretion. "Evidence of a prior sexual offense is indisputably relevant in a prosecution for another sexual offense." (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179; *People v. Yovanov, supra,* 69 Cal.App.4th at p. 405.) Here the uncharged act shares significant similarities with the charged acts and is therefore highly probative of [Lavorico's] sexual intent and propensity to commit lewd acts against prepubescent females. The victims of the charged and uncharged offenses were the same age, the uncharged act took place in a similar setting while [Lavorico] was in a babysitting role, and his acts appear to have been an attempt to commit the same type of act he committed against A. several times while he was lying on the floor and she was sitting on him. Moreover, because the charged offenses were committed in private and there was no physical evidence to corroborate the victims' testimony, the uncharged offense was necessary to corroborate the victims' testimony. (*Falsetta, supra,* 21 Cal.4th at p. 911.) Additionally, the evidence came from an independent source, and it was not particularly inflammatory when compared to the charged acts committed against A.

Nor do we find the 1985 act was remote. [Lavorico] contends the act took place almost 20 years before the charged offenses. We disagree and find it took place only 14 years before the charged offenses, which began in 1999. Although it has been said that a 20-year-old conviction "'meets any reasonable threshold test of remoteness'" (*People v. Harris, supra,* 60 Cal.App.4th at p. 739, quoting *People v. Burns* (1987) 189 Cal.App.3d 734, 737-739), the courts have rejected claims of remoteness for lesser periods of time. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [12 years was not too remote], superseded by statute on other grounds as stated in *People v. Britt* (2002) 104 Cal.App.4th 500, 505; *People v. Ing* (1967) 65 Cal.2d 603, 612 [15 years was not too remote]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 [18 to 25 years was not too remote particularly when balanced by the similarities between the charged and uncharged offenses].)

Here, the charged and uncharged offenses were crimes of opportunity, which occurred while [Lavorico] was in a caretaking role. Given the similarity of the victims' ages and their connection to the defendant, it may very well have taken 14 years before the opportunity to molest a seven-year-old female again presented itself to defendant. Under all of the circumstances, we find the 1985 offense was not too remote.

[Lavorico] also contends evidence of the uncharged offense was prejudicial because he was not convicted of that offense and the jury may have decided to punish him for the prior acquittal, particularly in light of the prosecutor's closing argument. We disagree.

The fact [Lavorico] was acquitted of the 1985 offense is the sole factor in favor of exclusion and, as the trial court reasonably found, it was outweighed by the numerous factors supporting admission of the evidence. Moreover, the fact [Lavorico] was acquitted of the offense may very well have worked to his

10

>   advantage because the jury was informed of that fact and may not have given any or much weight to the evidence.
>       Nor do we find the prosecutor's closing argument heightened the prejudicial effect of the evidence.  In his closing argument, the prosecutor told the jury that the trier of fact in the 1985 courtmartial concluded the evidence was insufficient to prove guilt beyond a reasonable doubt.  He then argued that if the jury found he had proven the uncharged offense by a preponderance of the evidence, it could conclude that "if [defendant] did it back in 1985, then you can come to the conclusion that he did it here.  That's the whole point.  That's why the Legislature brought that law on to the books, because of what pedophilia is.  That's what it means."
>       This argument is entirely consistent with the legislative findings and history underlying Evidence Code section 1108.  As such, it was not prejudicial.  (See *Falsetta, supra,* 21 Cal.4th at p. 912.) [Footnote omitted.]  For all of these reasons, we find no abuse of discretion.[17]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[18]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[19]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[20]  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in Federal Constitution."[21]  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief

---

[17] *Lavorico*, 2007 WL 4510347 at *3-*6.

[18] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[19] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[20] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[21] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[22]  In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights.[23]  For example, the Supreme Court has barred the introduction of evidence in state-court criminal proceedings that violated the Fourth Amendment (search and seizure),[24] Fifth Amendment (confessions),[25] Sixth Amendment (Confrontation Clause),[26] and (right to counsel).[27]

Lavorico's argument to this Court is foreclosed by the Ninth Circuit decision in *Mejia* rejecting the contention that the admission of evidence under California Evidence Code § 1108 was an unreasonable application of Supreme Court precedent.[28]  The Ninth Circuit explained:

> Our holding in *United States v. LeMay,* 260 F.3d 1018 (9th Cir.2001), supports our conclusion that admission of the propensity evidence did not violate Mejia's due process rights.  In *LeMay,* on direct appeal rather than collateral review, we upheld introduction of evidence under Federal Rule of Evidence 414—which is roughly analogous to California Evidence Rule 1108, allowing former acts evidence with respect to allegations of child molestation—as being consistent with due process requirements.  *Id.* at 1022.  We noted that the Rule 414 evidence must pass the requirements of Rules 402 and 403, *id.* at 1026-27, the

---

[22] *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[23] *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[24] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[25] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[26] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[27] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

[28] *Mejia v. Garcia*, 534 F.3d 1036 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 141 (2009).

federal analogs to California Evidence Rule 352 under which Norma's testimony was admitted. We reasoned that due process requires that admission of prejudicial evidence not render a trial fundamentally unfair, which Rule 402, ensuring relevance, and Rule 403, guarding against overly prejudicial evidence, together guarantee. *Id.* California Evidence Rule 352 establishes a similar threshold for the propensity evidence introduced at Mejia's trial, suggesting that under *LeMay,* Rule 352, like Federal Rules 402 and 403, safeguards due process and protected Mejia's trial from fundamental unfairness.[29]

In the absence of intervening higher authority, e.g., a decision by the Supreme Court or the Ninth Circuit sitting en banc, this Court is bound by the decision in *Mejia*.[30] Accordingly, Lavorico is not entitled to relief under his first ground.

Ground 2:  Consecutive Sentences

Lavorico argues that the trial court erred in believing it had no discretion to impose concurrent sentences. In rejecting Lavorico's argument, the California Court of Appeal held:

> III.
> Consecutive Terms
>
> [Lavorico] contends the trial court mistakenly believed it had no discretion to impose concurrent sentences under the one strike law and requests that his 120-years-to-life sentence be vacated and the matter remanded to allow the trial court to exercise its discretion. Respondent contends [Lavorico] forfeited this claim by failing to raise an objection in the trial court. He further argues that the claim has no merit because the record does not reflect that the trial court held a mistaken view of its authority to impose concurrent terms. We agree with respondent as to its second point.[FN17]
>
> > FN17. We reject respondent's assertion of waiver. The claim that the trial court completely failed to exercise its discretion is not forfeited by failing to raise it in the trial court. (*In re Sean W.* (2005) 127 Cal.App.4th 1177, 1181-1182.)
>
> The trial court sentenced [Lavorico] under section 667.61, often referred to as the one strike law. We consider [Lavorico's] claim under the version of section 667.61 in effect when he committed the charged offenses. (See Stats.1998, ch. 936, § 9.) [Footnote omitted.] Under that version, section 667.61, subdivision (b)

---

[29] *Id*. at 1047, n.5.

[30] *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc).

provides that a person convicted of a specified offense under one of the listed circumstances is punishable by imprisonment for 15 years to life. Among the predicate offenses are forcible and nonforcible lewd and lascivious conduct (§ 288, subd. (a) and (b)) and sodomy by force (§ 286). (§ 667.61, subd. (c)(4), (6)-(7).) Among the listed circumstances is the multiple victim circumstance. (§ 667.61, subd. (e)(5).)

Although section 667.61 mandates that separate life terms be imposed for each offense, it does not mandate that the life terms be served consecutively. (*People v. Rodriquez* (2005) 130 Cal.App.4th 1257, 1261-1263.) Nevertheless, former section 667.6, subdivision (d) mandates that full term consecutive sentences be imposed on convictions for forcible lewd acts (§ 288, subd. (b)) and forcible sodomy (§ 286, subd. (c)(2)) where the crimes were committed on separate victims or on the same victim on separate occasions. (Stats. 1994, ch. 1188, § 7, p. 7187.)

Here [Lavorico] was convicted of four counts of lewd acts (§ 288, subd. (a); Cts. 1, 2, 7, 8), two counts of forcible lewd acts (§ 288, subd. (b)(1); Cts. 3, 4), and two counts of forcible sodomy. (§ 269, subd. (a)(3); 286; Cts. 5, 6.) The jury found true the multiple victim circumstance enhancement. (§ 667.61, subd. (e)(5).) Thus, mandatory full term consecutive sentences were required for counts three through six only. (former [*sic*] § 667.6, subd. (d).)

The probation report included the following statement: "The allegation of 667.61(e)(5) of the Penal Code (Multiple Victims) was found true. This constitutes a fifteen (15) years to life sentence on all Counts. Therefore, it is recommended the defendant be committed to State Prison for fifteen (15) years to life as to each Count, to be served consecutively. Consecutive sentencing is mandated for Counts 3-6. It is recommended the remaining Counts be sentenced consecutively pursuant to Rule 4.425(a)(3) as the crimes occurred on separate dates."[FN19]

> FN19. California Rules of Court, rule 4.425 (hereafter rule 4.425) sets forth the criteria affecting concurrent or consecutive sentences. Subdivision (a)(3) of that rule states "[t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."

At the sentencing hearing, the trial court indicated it had read and considered the probation report. After defense counsel requested that the court state its "rational [sic] for the sentence," the court stated as follows: "[i]t appears all the sentencing is mandatory. There are no mid or upper terms here to consider. Even though there are facts in mitigation, he has no prior criminal record. Seems everything is mandatory." After the victim's father made a victim impact statement, the trial court imposed sentence, stating as follows: "for Count One, violation of Section 288(a) of the Penal Code, he'll be sentenced to 15 years to life. [¶] Count Two, will be the same sentence of 15 years to life. [¶] Consecutive sentencing is—these sentences are to be served consecutively. 15

years to life for Count Two consecutive to Count One. [¶] *Regarding Counts Three through Six, consecutive sentencing is mandated.* And he'll be sentenced consecutively pursuant to Rule 4.425(a)(3) . . . . [¶] Count Seven and Eight, he's not eligible for probation under 1203.066 of the Penal Code . . . . [¶] He's subject to a life term under Penal Code section 667.61. That will be 15 years to life for Count Seven and 15 years to life for Count Eight, also." (Italics added.)

Thus, the record clearly reflects the trial court was aware of its discretion to impose concurrent sentences given the fact it read the probation report, which correctly advised that consecutive sentences were mandatory for counts three through six, while recommending imposition of consecutive sentences on the remaining four counts under rule 4.425(a)(3). The court's statement tracks the probation officer's report, confirming that it was aware of its discretion to impose consecutive sentences on the remaining counts. We therefore reject defendant's claim of error.[31]

Lavorico's second ground is premised upon an argument that the trial court misapplied state law. After thoroughly analyzing the applicable state statutes and considering the pre-sentence report as well as the transcript of the sentencing, the California Court of Appeal disagreed. Because the outcome depends upon the proper interpretation and application of state law, it is beyond the purview of this Court in a federal habeas proceeding.[32] "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[33] A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[34] This is especially

---

[31] *Lavorico*, 2007 WL 451037, pp. *7-*8.

[32] *Swarthout v. Cooke*, 562 U.S. ___, ___, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[33] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[34] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference).

true where the highest court in the state has denied review of the lower court's decision.[35]  This Court is also bound by the factual findings of the California Court of Appeal.

A federal habeas petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[36]  "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[37]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[38]  "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[39]

Lavorico has failed to establish a wrong of constitutional dimension.  Accordingly, Lavorico is not entitled to relief under his second ground.

## V.  CONCLUSION AND ORDER

Lavorico is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

---

[35] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[36] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[37] *Swarthout v. Cooke*, 562 U.S. ___, ___, 131 S. Ct. 859, 863 (2011) (per curiam) (internal quotation marks and citations omitted).

[38] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[39] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[40] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[41]

The Clerk of the Court is to enter judgment accordingly.

Dated: August 25, 2011.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[40] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("to obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El*, 537 U.S. at 327).

[41] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.